UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM JOHNS,

     Plaintiff,                        Case No. 2:20-cv-12271

                                        District Judge Nancy G. Edmunds

v.                                  Magistrate Judge Kimberly G. Altman

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT

### I.      Introduction

This is a Social Security case.  Plaintiff William Johns ("Johns") brings this action under 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Both parties have filed summary judgment motions (ECF Nos. 14, 18), which have been referred to the undersigned for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).

For the reasons set forth below, it is RECOMMENDED that the Commissioner's for Summary Judgment (ECF No. 18) be GRANTED and that

Johns' Motion for Summary Judgment (ECF No. 14) be DENIED and the

Commissioner's decision be AFFIRMED.

## II.     Background

### A.     Procedural History

Johns was 43 years old at the time of the March 6, 2018 alleged onset date.[1]

(ECF No. 12, PageID.263).  He graduated from high school and worked

previously as stocker/cleaner at a hospital, childcare worker, customer service

representative, debt collector, and housekeeper.  (*Id.*, PageID.291).  He last

worked in 2012.  (*Id.*, PageID.263, 359, 509).  He alleges disability due to bipolar

disorder and leg and kidney problems.  (*Id.*, PageID.290).

After Johns' March 20, 2018 SSI application was denied at the initial level

on July 10, 2018, he timely requested an administrative hearing, held on July 31,

2019 before Administrative Law Judge ("ALJ") Patricia McKay.  (*Id.*, PageID.75,

179).  Johns, represented by attorney Lyndsey Sharpe, testified, as did a

Vocational Expert ("VE").  (*Id.*, PageID.81, 113).

Johns offered the following testimony at the hearing:

---

[1] The initial alleged onset date was March 8, 2008, when Johns was 33.  The onset date was later amended to March 6, 2018.  (ECF No. 12, PageID.79).  This is also Johns' third application for benefits.  In 2013, he filed an application for disability benefits which was denied at the initial level and he did not seek further review.  (*Id.*, PageID.158).  He filed a second application, also for disability benefits, which was denied by an ALJ in June of 2016 and Johns did not appeal. (*Id.*)

He was unable to work due to limitations in standing, sitting, and using his hands on a repetitive basis.  (*Id.*, PageID.81).  He was unable to sit due to lower leg swelling caused by injuries sustained in a motorcycle accident.  (*Id.*, PageID.82).  At the advice of his doctors, he spent 23 hours each day reclining with his legs elevated.  (*Id.*).  He experienced lower extremity circulation problems.  (*Id.*, PageID.105).  He was unable to walk even one block.  (*Id.*, PageID.105).  He was prescribed muscle relaxers and pain medication for arthritic changes.  (*Id.*, PageID.106).  He did not smoke or use alcohol or illicit drugs.  (*Id.*, PageID.107).

Johns had also been diagnosed with Carpal Tunnel Syndrome ("CTS") in both wrists and bilateral arthritis of the shoulders.  (*Id.*, PageID.82-83).  As a result of the combined effect of his physical problems, he experienced difficulty cooking, shopping, and cleaning.  (*Id.*, PageID.83).  He relied on his girlfriend and brothers to help him with his regular activities.  (*Id.*).  He was no longer able to play video games or work on a computer due to CTS.  (*Id.*).  He wore wrist splints during his waking hours.  (*Id.*, PageID.104).  Due to "balance issues," he required the use of a cane for walking and standing.  (*Id.*, PageID.84-85).  He required prescription shoes for foot problems.  (*Id.*, PageID.97-98).

In addition to the physical limitations, Johns' had been diagnosed with bipolar and impulse control disorders.  (*Id.*, PageID.84).  He became frustrated very easily, avoided leaving the house, and became hostile with both acquaintances and strangers.  (*Id.*).  He experienced insomnia and did not sleep more than four hours a night.  (*Id.*, PageID.85).  He experienced the medication side effects "memory issues" and nausea.  (*Id.*, PageID.95-96).  He had been prescribed a CPAP machine for sleep apnea.  (*Id.*, PageID.85).  He also experienced kidney disease as a result of hypertension.  (*Id.*, PageID.86).

Johns stood 5' 10.5" tall and weighed 315 pounds.  He lived by himself in a first-floor studio apartment.  (*Id.*, PageID.87-88).  Due to physical limitations, he was unable to access a washer and dryer in the apartment complex's basement and relied on his girlfriend and brothers to wash his clothes.  (*Id.*, PageID.88-89).  He completed training as a patient care technician in 2009.  (*Id.*, PageID.89).  He held a valid driver's license but did not drive due to CTS.  (*Id.*, PageID.100).  He was able to perform self-care tasks.  (*Id.*, PageID.101).

B.    Medical Evidence[2]

December 2016 treating records by psychotherapist Mary Meier, LLP note Johns' report that he was unable to sit for more than two hours at a stretch due to

---

[2] Medical evidence predating the amended alleged onset date of March 6, 2018 is included for background purposes only.

leg swelling.  (*Id.*, PageID.400).  He reported spending his time playing video games.  (*Id.*).   August 2017 records by psychiatrist Augusto Jamora, M.D. note that Johns was alert, cooperative, and made good eye contact.  (*Id.*, PageID.431). Dr. Jamora observed that Johns exhibited normal motor activity but walked with a limp.  (*Id.*).  Johns was fully oriented with a sad mood.  (*Id.*). Dr. Jamora advised Johns to attend therapy sessions regularly, exercise, and attempt to lose weight, adding that exercise and weight loss would reduce pain.  (*Id.*, PageID.432).

Johns resumed treatment in September 2017 after a nine-month gap in service, noting that his claim for disability benefits had recently been denied.  (*Id.*, PageID.436).  Meier noted his report that he spent "all of his time playing on-line video games."  (*Id.*).  She recommended contacting Michigan Vocational Rehabilitation services.  (*Id.*).  Notes from a medication review from the following month state that Johns was again advised to contact vocational services.  (*Id.*, PageID.450).  Johns appeared well groomed with a calm mood and normal affect. (*Id.*, PageID.451).  In November 2017, Zarina Alam, M.D. noted Johns' report that sitting for an hour at a time caused leg swelling.  (*Id.*, PageID.455).  Johns requested a letter stating that he was totally disabled.  (*Id.*, PageID.456).  Dr. Alam's notes state that from her assessment, she "[did] not know that [she] necessarily agree[s] with that."  (*Id.*).  The following month, Meier remarked that Johns "becomes irritable" when given suggestions regarding his future and had

not contacted rehabilitation services.  (*Id.*, PageID.460).  He exhibited good

hygiene and grooming and a normal thought process.  (*Id.*, PageID.461).  Meier

noted that Johns had not even begun to think about changing his life.  (*Id.*,

PageID.462).  She gave him a poor prognosis.  (*Id.*).  Dr. Jamora's records from

the same month note Johns' report that he smoked marijuana to cope with

physical pain.  (*Id.*, PageID.465).  Johns reported that did not go out much and

spent most of his time playing video games.  (*Id.*).  Johns exhibited normal

insight, judgment, and orientation.  (*Id.*, PageID.466).

In January 2018, Johns was discharged from physical therapy after his

progress "plateaued."  (*Id.*, PageID. 549).  His physical therapist stated that Johns

"would benefit from the use of a cane for long walks."  (*Id.*, PageID.549-550).

Imaging studies of the right foot from the same month were negative for evidence

of fracture.  (*Id.*, PageID.608).  Dr. Alam's February 2018 records note Johns'

report of recent right big toe pain.  (*Id.*, PageID.495).  Johns reported that he was

unable to sit for more than one hour without pain.  (*Id.*, PageID.496).  The same

month, Dr. Jamora observed a normal gait and full orientation.  (*Id.*, PageID.499).

Meier's March 2018 records note good grooming, normal speech, affect, and

concentration.  (*Id.*, PageID.506).

A physical examination from the following month was unremarkable.  (*Id.*,

PageID.537).  In May 2018, Dr. Jamora observed a normal gait and motor

activity.  (*Id.*, PageID.527).  The same month, Dr. Alam noted the diagnoses of

arthritis of the left fibula and left ankle and heel.  (*Id.*, PageID. 529).  In June

2018, Meiers noted that Johns declined to use a prescribed CPAP machine.  (*Id.*,

PageID.520).  He exhibited good insight and judgment but was still in the

"precontemplation" stage of changing his life.  (*Id.*, PageID.521).  Physical

examination records from the same month show no apparent distress and normal

movement in all extremities.  (*Id.*, PageID.525).

In June, 2018, Mitchell Solomon, Ph.D. performed a consultative

psychological exam on behalf of the SSA, noting Johns' report of mood swings

and depression which had been exacerbated by physical injuries sustained in a

2007 motorcycle accident.  (*Id.*, PageID.509).  Johns reported attending individual

therapy sessions once a month.  (*Id.*).  Johns reported that he last worked in 2012

as a debt collector.  (*Id.*).  He denied legal problems, a history of substance abuse,

or psychiatric hospitalizations.  (*Id.*, PageID.510).

Dr. Solomon observed that Johns was well-groomed, pleasant, and

cooperative with a depressed mood and low motivation.  (*Id.*).  Johns denied

hallucinations, delusions, or compulsive behaviors.  (*Id.*).  He exhibited normal

speech and was able to sit without difficulty throughout the evaluation.  (*Id.*,

PageID.511).  He appeared well oriented with good informational and abstract

thinking skills and good judgment.  (*Id.*).  Dr. Solomon diagnosed Johns with mild

bipolar 1 disorder.  (*Id.*, PageID.512).  He found no significant limitation in understanding, remembering and applying information or concentration but found "at least" moderate limitations in social interaction and "moderate to marked limitations in adapting or managing [himself]."  (*Id.*).  Dr. Solomon found that Johns' ability to work could be "further impacted" by "physical or medical limitations."  (*Id.*).

The same month, Thomas Flake, M.D. performed a non-examining assessment of the treating and consultative records regarding the alleged physical conditions, finding that Johns could lift 10 pounds occasionally and 20 frequently; sit, stand, or walk for about six hours in an eight-hour workday; push/pull in the upper extremities without limitation.  (*Id.*, PageID.169).  He limited Johns to occasional use of foot controls due to left foot pain, morbid obesity, and the need for an assistive device for ambulation.  (*Id.*).  Dr. Flake limited Johns to occasional postural activity except for a preclusion on all climbing of ladders, ropes, and scaffolds.  (*Id.*).  He precluded all work involving "hazards" including machinery and heights.  (*Id.*, PageID.170).

In July 2018, Rose Moten, Ph.D. reviewed Johns' psychological treating records on behalf of the SSA, finding mild limitation in the areas of understanding, remembering, or applying information and adapting and managing

himself.  (*Id.*, PageID.166).  She found moderate limitation in the areas of interacting with others and concentration, persistence, or maintaining pace.  (*Id.*).

August 2018 sleep disorder clinic records note Johns' report of reduced sleep apnea symptoms.  (*Id.*, PageID.674).  Meier's notes from the same month note that Johns used a cane.  (*Id.*, PageID.683).  He exhibited good insight and judgment with full orientation.  (*Id.*, PageID.683).  Meier's October 2018 records state that Johns had recently been diagnosed with bilateral CTS due in part to "constant video gaming."  (*Id.*, PageID.699).  Johns reported that he was "reluctant" to stop gaming.  (*Id.*).  Johns was advised to get out of bed when not sleeping.  (*Id.*).  Dr. Alam's records note that an EMG showed mild bilateral CTS. (*Id.*, PageID.703, 756).  Johns was prescribed wrist splints.  (*Id.*)  Dr. Alam noted a normal mood and affect.  (*Id.*, PageID.704).

December 2018 records by Renee Maan, M.D. noted the conditions of depression, anxiety, chronic pain, and impulse control complicated by chronic leg pain.  (*Id.*, PageID.713).  Meier's notes from the same month state that Johns slept only three hours the night before because he was playing video games online. (*Id.*, PageID.716).  She advised contacting rehabilitation services and spending "less time in bed."  (*Id.*, PageID. 719).  In February 2019, Johns reported good results from CPAP treatment.  (*Id.*, PageID.726).  The same month, Ngozi Njoku, CNP performed a physical examination noting no distress, full orientation and

normal movement in all extremities.  (*Id.*, PageID.729).  Dr Alam's record from later the same month note edema.  (*Id.*, PageID.736).

In May 2019, Dr. Alam noted that despite the ongoing condition of lower extremity edema, Johns "appeare[d] comfortable seated" with "no acute distress." (*Id.*, PageID.744).  Imaging studies of the left shoulder showed moderate degenerative changes.  (*Id.*, PageID.747).

In July 2019, Dr. Alam completed a physical assessment, noting that she had treated Johns for five years.  (*Id.*, PageID.663).  She found that he could stand or walk for a total of two hours a day but for no more than15 minute increments. (*Id.*, PageID.660).  She found that he could sit for a total of six hours in an eight-hour workday with a position change every 30 minutes.  (*Id.*, PageID.661).  She noted that he needed a cane for walking.  (*Id.*).  She found that he could lift 20 pounds occasionally and 10 frequently but was unable to perform any postural activity.  (*Id.*).  She found that he was limited to occasional manipulative activity due to upper extremity pain and numbness.  (*Id.*, PageID.662).  She found that Johns required environmental restrictions regarding heights, moving machinery, temperature extremes, chemicals, airborne contaminants, noise, humidity, and vibrations, noting that environmental hazard could "aggravate" Johns' "pain and blood pressure."  (*Id.*).  She found that Johns need to elevate his legs when seated due to "chronic lower extremity swelling."  (*Id.*, PageID.663).

November 2019 imaging studies of the right shoulder show mild

osteoarthrosis with rotator cuff tendinopathy.  (*Id.*, PageID.457).

III.     Framework for Disability Determinations (the Five Steps)

Under the Act, DIB and SSI are available only for those who have a

"disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act

defines "disability" as the "inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The

Commissioner's regulations provide that a disability is to be determined through

the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

11

> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, No. 08-10279, 2008 WL 4793424, at *4 (E.D.

Mich. Oct. 31, 2008), citing 20 C.F.R. § 416.920; *see also Heston v. Comm'r of*

*Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); 20 C.F.R. § 404.1520.  "The burden

of proof is on the claimant throughout the first four steps. . . .  If the analysis

reaches the fifth step without a finding that claimant is not disabled, the burden

transfers to the [Commissioner]."  *Preslar v. Sec'y of Health & Human Servs.*, 14

F.3d 1107, 1110 (6th Cir. 1994).

Following this sequential analysis, the ALJ found that Johns was not

disabled under the Act.  At Step One, the ALJ found that Johns had not engaged in

substantial gainful activity since the alleged onset date of March 6, 2018 thorough

the date of the decision.  (ECF No. 12, PageID.57).  At Step Two, the ALJ found

that Johns had the severe impairments of "bipolar disorder and pain disorder,

gouty arthritis, right rotator cuff tendinopathy with osteoarthritis of the

acromioclavicular joint, left acromioclavicular osteoarthritis, bilateral [CTS],

obstructive sleep apnea, obesity, hypertension, and chronic left heel pain due to

arthritis status post open reduction internal fixation after motor vehicle accident "

(*Id.*).  At Step Three, the ALJ found that Johns' impairments, whether considered

alone or in combination, did not meet or medically equal a listed impairment. (*Id.*,

PageID.58).

The ALJ then assessed Johns' residual functional capacity ("RFC"),

concluding that he was capable of performing exertionally sedentary work with

the following additional limitations:

> [Only] occasional climbing of stairs, crouching, crawling, kneeling,
> stooping, and bending; avoid work place hazards such as dangerous,
> moving machinery and unprotected heights so the claimant is not able
> to climb ladders, ropes, and scaffolding; frequent grasping and gross
> manipulation with the bilateral upper extremities; frequent reaching
> with the bilateral upper extremities but occasional overhead reaching;
> occasional foot controls with the left lower extremity; simple, routine,
> repetitive work; occasional interaction with supervisors, co-workers,
> and the general public; low stress work, which is work that is self-
> paced and not at a production rate and where the job duties are not
> interdependent with those of co-workers.

(*Id.*, PageID.60).

At Step Four, the ALJ found that Johns was unable to perform his past

relevant work. (*Id.*, PageID.68). The ALJ cited the VE's hearing testimony in

support of her Step Five finding that Johns could perform the unskilled, sedentary

work of an inspector, bench hand, and sorter. (*Id.*, PageID.69, 118-119).

## IV.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision under 42 U.S.C. § 405(g). Although the court can

examine portions of the record that were not evaluated by the ALJ, *Walker v. Sec.*

13

*of Health & Hum. Servs.*, 884 F.2d 241, 245 (6th Cir. 1989), its role is a limited one.  Judicial review is constrained to deciding whether the ALJ applied the proper legal standards in making his or her decision, and whether the record contains substantial evidence supporting that decision.  *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 224–25 (6th Cir. 2019)); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (noting that courts should not retry the case, resolve conflicts of evidence, or make credibility determinations); *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 783 (6th Cir. 2017)(same).

An ALJ's factual findings must be supported by "substantial evidence."  42 U.S.C. § 405(g).  The Supreme Court has recently explained what that term means:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations.  And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high.  Substantial evidence, this Court has said, is more than a mere scintilla.  It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

In making "substantial evidence" the relevant standard, the law preserves the judiciary's ability to review decisions by administrative agencies, but it does not grant courts the right to review the evidence de novo.  *Moruzzi v. Comm'r of*

14

*Soc. Sec.*, 759 F. App'x 396, 402 (6th Cir. 2018) ("The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.") (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)).  An ALJ's factual findings are therefore subject to multi-tiered review, but those findings are conclusive unless the record lacks sufficient evidence to support them.  *Biestek*, 139 S. Ct. at 1154.

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight' " of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (internal quotations omitted).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotations omitted).

V.      Analysis[3]

Johns makes two arguments for remand, contending first that the ALJ

erred by failing to address his alleged need for a cane.  (ECF No. 14, PageID.780-

781).   The Commissioner concedes that Johns' physical therapist recommended

the use of a cane and that the RFC does not include the need for an assistive

device but cites the VE's testimony that the need for a cane would not affect any

of the Step Five job findings.  (ECF No. 18, PageID.799-801) (ECF No. 12,

PageID.125-126).   Second, Johns faults the ALJ's rejection of treating physician

Dr. Alam's July 2019 disability opinion.  (ECF No. 14, PageID.781).   The

Commissioner points out that Johns' argument is based on outdated authority

giving presumptively controlling weight to a treating physician's opinion.  (ECF

No. 18, PageID.804-805).

A.      The Use of a Cane

The Commissioner concedes that while the ALJ underscored that in January

2018 Johns requested a cane (rather than waiting for one to be prescribed) earlier

the same month, a physical therapist recommended the use of a cane for "long

walks."  (ECF No. 12, PageID.63) *citing* (*Id.*, PageID.775-776).   The

Commissioner concedes further that the ALJ "did not build a logical bridge to her

---

[3] Any issue not raised directly by the moving party is deemed waived.  *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002).

conclusion that the cane was not medically necessary." (ECF No. 18,

PageID.800). However, the Commissioner contends that the error is harmless,

citing the VE's testimony that the need for a cane would not change her

conclusion that an individual with the limitations set forth in the RFC could

perform the sedentary work of an inspector, bench hand, and sorter.[4] (ECF No.

12, PageID.118-119, 125-126).

After the VE made the above job findings, the ALJ posed the following

question:

> The ALJ: If this hypothetical person were using the assistive device like
> Mr. Johns for walking, would that affect his ability to do any of the
> jobs?
>
> The VE: Judge, in all due respect, the answer is no. It does not interfere
> with the actual performance of the duties. The person has to get to the
> [workstation]. Use of a cane is - - there may an employer preference,
> but it doesn't preclude the actual duties, getting to your work station,
> going to the bathroom.[5]

(ECF No. 12, PageID.125-126).

---

[4] The VE's job testimony was given in response to a set of modifiers (the
"hypothetical question") identical to those set forth in the RFC. (ECF No. 12,
PageID.60, 116-119).

[5] The VE went on to testify that the need to take more than six minutes each
hour to use a cane to arise from a sitting position to standing position would be
work preclusive. (ECF No. 12, PageID.126). But none of the medical evidence
shows that Johns required a cane for merely standing or arising from a sitting to
standing position. Johns' physical therapist opined that he "would benefit from
the use of a cane *for long walks*." (*Id*., PageID.549) (emphasis added). Dr. Alan's
July 2019 opinion states that Johns required a cane "for mobility." (*Id*.,
PageID.661).

The Commissioner's argument is well taken. Assuming that Johns has established the need for a cane, the VE's testimony regarding cane use for walking and its lack of effect on her job findings shows that the Step Five determination would remain unchanged. Johns has not sustained his burden of showing that the ALJ's error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409, (2009) ("Burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *see also Lowery v. Comm'r of Soc. Sec.*, No. CV 17-12348, 2018 WL 3041201, at *5, n. 1 (E.D. Mich. May 29, 2018) (Grand, M.J.) (Even assuming "the ALJ had erred in failing to incorporate Lowery's use of a cane into her RFC findings, any such error is harmless where the VE testified that 60,000 sorter jobs could still be performed by a hypothetical individual with such restrictions), *report and recommendation adopted,* No. 17-12348, 2018 WL 3036320 (E.D. Mich. June 19, 2018); *Jozlin v. Comm'r of Soc. Sec.*, No. 12-CV-10999, 2013 WL 951034, at *9 (E.D. Mich. Mar. 12, 2013) (Majzoub, M.J.) (consent) (Although the RFC for light work did not include the need for a cane, the VE's testimony that cane use would nonetheless allow for a significant number of sedentary jobs renders the omission, at best, harmless error). Likewise here, the VE found that the use of a cane for ambulation would not affect Johns' ability to perform approximately 91,000 sedentary jobs the national economy. (ECF No. 12, PageID.125-126).

A remand for further proceedings to amend the RFC to include "the use of a cane" among the workplace limitations would not change the finding that Johns could perform the work of an inspector, bench hand, or sorter.  (*Id.*, PageID.118-119).  "[C]ourts are not required to 'convert judicial review of agency action into a ping-pong game' where 'remand would be an idle and useless formality.' " *Rabbers, supra,* 582 F.3d at 654 (6th Cir. 2009) (quoting *NLRB v. Wyman–Gordon Co.,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)).

Further, while the Commissioner concedes that the ALJ's discussion of the alleged need for a cane ought to have been better developed, the ALJ did not neglect to discuss the cane use or its possible effect on the RFC.  She noted that in January 2018, a treating source recommended that Johns "use a cane for long walks." (ECF No. 12, PageID.63, 550).  She observed that at the appointment where Johns requested a cane, a physical examination showed full strength and the absence of swelling.  (*Id.*, PageID.63).  The ALJ discussed Johns' allegation that he required the use of a cane.  (*Id.*, PageID.65).  She also acknowledged Dr. Alam's opinion that Johns required the use of a cane but found Dr. Alam's opinion (as a whole) "unpersuasive."  (*Id.*, PageID.67).  While the ALJ did not state explicitly "this is why I don't think Johns requires a cane . . ." she cited the records showing minimal swelling and full muscle strength which would undermine the alleged need for a cane.  Most significantly, given that the ALJ also

queried the VE as to the effect of the cane use on the job findings, it cannot be

argued that she overlooked the cane allegations or their effect on the disability

determination.  Accordingly, Johns cannot argue successfully that the adjudication

of his claim was prejudiced by the failure to consider the use of a cane.  "[W]e

will not remand for further administrative proceedings unless 'the claimant has

been prejudiced on the merits or deprived of substantial rights because of the

agency's procedural lapses.'"  *Rabbers*, 582 F.3d at 654 (quoting *Connor v.

United States Civil Serv. Comm'r,* 721 F.2d 1054, 1056 (6th Cir.1983)).  Because

Johns has not made such a showing, a remand on this basis is not warranted.

## B.    The Analysis of the Opinion Evidence

Johns criticizes the ALJ's finding that Dr. Alam's July 2019 opinion was

"unpersuasive."  (ECF No. 14, PageID.781) (ECF No. 12, PageID.67).  He argues

that because Dr. Alam is a treating physician, there is a "rebuttable presumption"

that her opinion is entitled to "great deference.  (ECF No. 14, PageID.782) (citing

20 C.F.R. § 416.927(c)(2)).

For claims filed before March 27, 2017, the opinion of a treating,

acceptable medical source is accorded controlling weight if "well-supported by

medically acceptable clinical and laboratory diagnostic techniques," and "not

inconsistent with the other substantial evidence."  *See Wilson v. Comm'r of Soc.*

*Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2),416.927;

SSR 96–2p, 1996 WL 374188, at *5 (1996).

However, because Johns did not file an application for benefits until March

2018, the rule according presumptively controlling weight to an acceptable

treating source does not apply.  In contrast to the earlier claims where § 404.1527

(for Disability Insurance Benefits) or § 416.927 (SSI) is applied, for claims made

on or after March 27, 2017 the ALJ will weigh both treating and non-treating

medical evaluations based on how well they are supported by the remainder of the

record.  *See* 20 C.F.R. §§ 404.1520c, 416.920c ("We will not defer or give any

specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from your

medical sources").  The factors to be considered in evaluating medical opinions

include supportability and consistency with the record as a whole; relationship

with the claimant; length of the treatment relationship; frequency of examinations;

purpose and extent of the treating relationship; whether the source has examined

the claimant; specialization; and any other factors that support or undermine the

medical opinion.  §§ 404.1520c(c), 416.920c.  ALJs must articulate the "most

important factors of supportability and consistency" of the medical opinions but

"are not required to[ ] explain" the consideration given to the remaining factors.

§§ 404.1520c(b); 416.1520c.  Thus, Johns' citation to cases applying the older

regulations in support of his claim that Dr. Alam's opinions was entitled to presumptively controlling weight is unavailing.

Further, applying the current regulations, the ALJ provided a sufficient rationale for finding Dr. Alam's opinion "unpersuasive."  She noted that Alam's finding limited Johns to only occasional manipulative activity stood at odds with his ability to care for his personal needs and live alone.  (ECF No. 12, PageID.67).  She cited treating records showing that Johns was able to cook for himself.  (*Id.*).  The ALJ cited the treating records showing consistently good muscle tone and coordination.  (*Id.*).  She observed that Johns' alleged need to elevate his legs regularly was contradicted by a portion of the treating records showing mild or non-existent edema.  (*Id.*, PageID.65-67).  The ALJ also noted that the alleged limitations were undermined by Johns' repeated failure to exercise or lose weight as repeatedly advised by his treating sources.  (*Id.*, PageID.67).  The medical records note repeatedly that Johns failed to take his care providers' recommendations to lose weight, exercise, maintain proper sleep hygiene, refrain from playing video games, and contact vocational rehabilitation services.  As discussed in the previous section, although the ALJ declined to adopt Dr. Alam's finding that Johns required the use of a cane, the VE testified that the need for a cane for ambulation would not change the job findings supporting the Step Five determination.

Accordingly, the undersigned finds that Johns has not presented arguments supporting a remand to the administrative level for further proceedings.  Because the ALJ's determination was within the "zone of choice" accorded to the fact-finder at the administrative hearing level and any possible error discussed herein do not warrant remand, it should not be disturbed by this Court.  *Blakley, supra*, 581 F.3d at 406.

## VI.    Conclusion

For the reasons set forth above, it is RECOMMENDED that the Commissioner's motion (ECF No. 18) be GRANTED and that Johns' motion (ECF No. 14) be DENIED and the Commissioner's decision be AFFIRMED.


Dated:  January 26, 2022                     s/Kimberly G. Altman
Detroit, Michigan                            KIMBERLY G. ALTMAN
                                             United States Magistrate Judge

## **NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues

but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 26, 2022.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager